Rodeen Talebi (CA SBN 320392)
talebi@fr.com
FISH & RICHARDSON P.C.
500 Arguello St. Suite 400
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Neil J. McNabnay (*Pro Hac Vice*)
mcnabnay@fr.com
Ricardo J. Bonilla (*Pro Hac Vice*)
rbonilla@fr.com
Noel F. Chakkalakal (*Pro Hac Vice*)
chakkalakal@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone: (214) 747-5070
Facsimile: (214) 747-2091

Counsel for Defendant
FINALE, INC.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **SCANNING TECHNOLOGIES INNOVATIONS, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**FINALE, INC.**<br><br>Defendant. | **Case No. 5:21-cv-03119-TSH**<br><br>**PATENT CASE**<br><br>**JURY TRIAL DEMANDED**<br><br>**FINALE, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM WITH MEMORANDUM OF LAW IN SUPPORT**<br><br>DATE: July 15, 2021<br>TIME: 10:00 a.m.<br>DEPT: Courtroom G, 15th Floor<br>JUDGE: Thomas S. Hixson |

<u>**NOTICE OF MOTION**</u>

TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on July 15, 2021 at 10:00 a.m., or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, located at the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable Thomas S. Hixson, Defendant Finale, Inc. ("Finale" or "Defendant") will move, and hereby presents for hearing by the Court this motion to dismiss Plaintiff Scanning Technologies Innovations LLC's ("Scanning Technologies") Complaint with prejudice for the reasons set forth below.

This motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, and such additional papers and arguments as map be presented at or in connection with the hearing.


Dated: June 7, 2021                    Respectfully submitted,

                                       By: /s/ *Rodeen Talebi*
                                       Rodeen Talebi

# TABLE OF CONTENTS

I.    STAGE AND NATURE OF PROCEEDINGS ......................................................1

II.   SUMMARY OF THE ARGUMENT .................................................................1

III.  STATEMENT OF THE FACTS ........................................................................2

IV.  LEGAL STANDARD.......................................................................................4

      A.     This case should be dismissed for failure to state a claim. ..........................4

      B.     The Law of 35 U.S.C. § 101. .....................................................................5

V.   ARGUMENT ...................................................................................................6

      A.     The '101 Patent is Invalid Under 35 U.S.C. § 101 .....................................7

            1.     *Alice* Step 1: The '101 Patent is directed to the abstract idea of communicating information about an article of commerce by use of a marking.........................................7

            2.     *Alice* Step 2: No inventive concept to transform the abstract idea into patent-eligible subject matter is disclosed.....................................................................10

            3.     The remaining claims are also abstract and contain no "inventive concept."..............................................14

VI.  CONCLUSION................................................................................................15

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Affinity Labs of Tex., LLC v. Directv, LLC*,
   838 F.3d 1253 (Fed. Cir. 2016)....................................................................7, 12

5

6

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014) ............................................................... *passim*

7

8

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*,
   687 F.3d 1266 (Fed. Cir. 2012).....................................................................5

9

*Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016).....................................................................12

10

11

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018).........................................................12, 13, 15

12

*Bilski v. Kappos*,
   561 U.S. 593 (2010).....................................................................5, 6

13

14

*BSG Tech LLC v. Buyseasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018).....................................................................1, 12

15

16

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
   927 F.3d 1306 (Fed. Cir. 2019).....................................................................6

17

*ChargePoint, Inc. v. SemaConnect, Inc.*,
   920 F.3d 759 (Fed. Cir. 2019).....................................................................9, 12

18

19

*Content Extraction & Transmission LLC v. Wells Fargo Bank*,
   776 F.3d 1343 (Fed. Cir. 2014).....................................................................6, 10

20

21

*Diamond v. Chakrabarty*,
   447 U.S. 303 (1980).....................................................................5

22

*Diamond v. Diehr*,
   450 U.S. 175 (1981).....................................................................6

23

24

*Electric Power Group, LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016).....................................................................1

25

26

27

28

ii

*Epic IP LLC v. Backblaze, Inc.*,
   351 F. Supp. 3d 733 (D. Del. 2018)..................................................................10

*Finjan, Inc. v. Blue Coat System, Inc.*,
   879 F.3d 1299 (Fed. Cir. 2018)......................................................................7

*Fleming v. Pickard*,
   581 F.3d 922 (9th Cir. 2009) .........................................................................4

*Fort Props., Inc. v. Am. Master Lease LLC*,
   671 F.3d 1317 (Fed. Cir. 2012).....................................................................6

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
   850 F.3d 1322 (Fed. Cir. 2017).....................................................................13

*Internet Patents Corp. v. Active Network, Inc.*,
   790 F.3d 1343 (Fed. Cir. 2015)..................................................................9, 10

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
   66 F. Supp. 3d 829 (E.D. Tex. 2014) ...........................................................10

*Mace v. Ocwen Loan Servicing, LLC*,
   16-cv-05840-MEJ, 2018 WL 368601 (N.D. Cal. Jan. 11, 2018)......................4

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   132 S. Ct. 1289 (2012) ..................................................................................6

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
   521 F.3d 1097 (9th Cir. 2008) .......................................................................4

*Parker v. Flook*,
   437 U.S. 584 (1978)......................................................................................6

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*,
   No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 8, 2017) ......10

*Procter & Gamble Co. v. QuantifiCare Inc.*,
   17-CV-03061-LHK, 2017 WL 6497629 (N.D. Cal. Dec. 19, 2017) ..................4

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018)......................................................................7

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*,
   873 F.3d 905 (Fed. Cir. 2017)............................................................. *passim*

iii

*In re TLI, Commc'ns LLC Patent Litig.*,
    823 F.3d 607 ............................................................................................8, 11, 12

*Ultramercial, Inc. v. Hulu*,
    LLC, 772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring) ..................................5, 11, 14

**Statutes**

35 U.S.C. § 101 ................................................................................................ *passim*

**Other Authorities**

Rule 12(b)(6) of the Federal Rules of Civil Procedure ...................................................1, 2, 4, 6

iv

## I.      STAGE AND NATURE OF PROCEEDINGS

On March 25, 2021, Plaintiff Scanning Technologies filed this lawsuit accusing Defendant Finale, Inc.("Finale") of infringing U.S. Patent No. 10,600,101, entitled "Systems and Methods for Indicating the Existence of Accessible Information Pertaining to Articles of Commerce." Scanning Technologies accuses Finale's inventory system, associated hardware and software, and similar products of infringing at least Claim 1 of the '101 Patent. (D.I. 1 at ¶¶ 13–26.).

## II.     SUMMARY OF THE ARGUMENT

Finale moves to dismiss Scanning Technologies' Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. The claims of the asserted patent are invalid because they are directed to patent-ineligible subject matter under 35 U.S.C. § 101. The claims recite the mere notion of using generic computer components to achieve the abstract idea of communicating information about an article of commerce by use of a marking. Indeed, the claims at issue here "fall into a familiar class of claims "directed to" a patent-ineligible concept." *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). Much like the Barcode and QR claims at issue in *Secured Mail*, the claims at issue here "merely provide that an identifier is affixed to [an article of commerce] that is used by the recipient to request and display electronic information." *Secured Mail Solutions LLC v. Universal Wilde, Inc*., 873 F.3d 905, 910 (Fed. Cir. 2017).

Moreover, the recited components, "a mobile device" comprising a "signal processing device" and a "visual input device," and "a server," do not amount to any technical improvement in the functioning of the system or any components. Rather, these components are used only as tools to implement the abstract idea of communicating information about an article of commerce by use of a marking. *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290–91 (Fed. Cir. 2018) ("If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been

1   transformed into a patent-eligible application of an abstract idea.").  The claims of the '101

2   Patent thus lack an inventive concept.

3        Resolving this issue does not require discovery or formal claim construction. The

4   '101 Patent does no more than disclose an abstract idea using conventional and well-known

5   components. Therefore, the claims of the patent are invalid under § 101 for failure to claim

6   patent eligible subject matter. To avoid waste of judicial and party resources unnecessarily

7   litigating an invalid patent, Finale thus requests that the Court enter judgment in its favor on

8   the causes of action in the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil

9   Procedure.

10  **III.    STATEMENT OF THE FACTS**

11        The '101 Patent was filed on April 9, 2018, and issued on March 24, 2020. It is

12  entitled "[s]ystems and methods for indicating the existence of accessible information

13  pertaining to articles of commerce," and is directed to "systems and methods for enabling a

14  mobile device to indicate the existence of accessible information about an identified article of

15  commerce." '101 Patent at 1:28-30.

16        The applicant acknowledged that numerous technologies existed at the time of their

17  application. *Id*. For example, the applicant acknowledged that "[p]ortable digital devices are

18  now common." *Id*. at 1:34. The applicant further acknowledged that "[v]arious

19  communications technologies are frequently built into these devices" and "mobile devices

20  may employ an incorporated imaging device to scan Universal Product Codes (UPCs) or

21  other symbologies disposed on articles of commerce to receive more information on such

22  articles." *Id*. at 1:48, 1:59-62. The problem identified by the applicant was that "devices take

23  time to connect to the internet (if internet service is even available) and then the user still

24  may or may not have information on the article of commerce." *Id*. at 1:64–1:66. The

25  applicant contended that the delay and lack of information led to user frustration. *Id*. at 1:66-

26  2:2. The applicant thus proposed a solution whereby a user may be notified of the existence

27  of a link to information of an article of commerce. *Id*. at 2:17–19.

28        But the applicant described his "solution" only with generic components and only at a

    high-level of generality. For example, exemplary Claim 1 of the '101 Patent describes "a

system for indicating an existence of a link" consisting of: (1) a mobile device; (2) digital

files; and (3) a server. *Id*. at Cl. 1. It requires that the server "store a look-up table that

includes at least a plurality of bar codes associated with a plurality of articles of commerce."

*Id.* The claimed mobile device includes: (1) a signal processing device; and (2) a visual input

device. *Id.* Neither the claims nor the specification discloses any special algorithms or

programming.

        The specification states that Figure 3, below, depicts "a system in accordance with the

present disclosure." *Id*. at 8:62–63.



FIG. 3

*Id*., Fig. 3. In Fig. 3, mobile device 100 is associated with database 110. *Id*. at 8:63-65.

Database 110 may be stored in internal memory of mobile device 100 (e.g., storage module

110) or external memory communicably coupled to mobile device 100. *Id*. The mobile

device 100 communicates to a server 304 via communication network 302 via any form of

communication and protocol means. *Id*. at 9:5–23. Server 304 stores look-up tables in storage

medium 306. *Id*. at 9:23-24. The look-up tables stores information such as Universal Product

Codes (UPCs) and information links. *Id*. at 9:23–25.  Also depicted is product 310

comprising barcode 312 which may be scanned by mobile device 100.

The mobile device 100 downloads at least one look-up table from storage 306 to

database 110 via communication medium 308. Mobile device 100 may then be used to scan

barcode 312. Upon scanning barcode 312, mobile device 100 may look up product 310 in

database 110 (which contains the look-up table downloaded from storage 306). The mobile

device may then learn of the existence of a link to more information regarding product 310.

Thus, the Asserted Patent claims communicating information (existence of a link to more

information) about an article of commerce by a barcode, which can be scanned by a mobile

device to communicate the information.

## IV.   LEGAL STANDARD

### A.     Judgment Should be Entered in Favor of Finale at the Pleading Stage.

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a

complaint that fails to state a claim upon which relief can be granted. "Dismissal under Rule

12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient

facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521

F.3d 1097, 1104 (9th Cir. 2008). "While a complaint 'need not contain detailed factual

allegations' to survive a Rule 12(b)(6) motion, 'it must plead enough facts to state a claim to

relief that is plausible on its face.'" *Mace v. Ocwen Loan Servicing, LLC*, 16-cv-05840-MEJ,

2018 WL 368601, *2 (N.D. Cal. Jan. 11, 2018) (quoting *Cousins v. Lockyer*, 568 F.3d 1063,

1067–68 (9th Cir. 2009) (internal quotation marks and citations omitted)). "A claim is

facially plausible when it 'allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (internal quotation marks omitted)). Here, the court must accept "all factual

allegations in the complaint as true and construe them in light most favorable to the non-

moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009); see also *Procter &*

*Gamble Co. v. QuantifiCare Inc*., 17-CV-03061-LHK, 2017 WL 6497629, at *25 (N.D. Cal.

Dec. 19, 2017) (finding an "obligation to construe the pleadings in the light most favorable to

Plaintiffs" when a claim presents an "extremely close call").

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. See *Ultramercial, Inc. v. Hulu*, LLC, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

### B.    The Law of 35 U.S.C. § 101.

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. The law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and *abstract ideas*." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980) (emphasis added). Abstract ideas are ineligible for protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611–12. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted).

Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id*. at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). Furthermore, the use of a

5

generic hardware or computer technology to perform well-understood, routine, and conventional activities commonly used in industry, does not make a claim patent eligible. " *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). Also, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297–98, 1300–01; *Bilski*, 561 U.S. at 610; *Diamond v. Diehr*, 450 U.S. 175, 191–92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope."). Although factual allegations are generally presumed true in the context of a Rule 12(b)(6) inquiry, any such allegations concerning the inventive nature of the claims cannot be "wholly divorced from the claims or the specification." *Cellspin Soft, Inc. v. Fitbit, Inc*., 927 F.3d 1306, 1317 (Fed. Cir. 2019).

## V.   ARGUMENT

The claims of the Asserted Patent are invalid under 35 U.S.C. § 101 because they fail both prongs of the *Alice* test. Each of the claims is directed to the abstract idea of communicating information about an article of commerce by use of a marking. Abstract ideas are not eligible for patenting. None of the claims contains an "inventive concept sufficient to ensure that the patent in practice amounts to ***significantly more*** than a patent upon the ineligible concept itself." *See Alice*, 134 S. Ct. at 2355 (emphasis added). Because Scanning Technologies cannot state a claim upon which relief may be granted, Finale respectfully requests that the Court dismiss this case with prejudice. FED. R. CIV. P. 12(b)(6).

1

**A.      The '101 Patent is Invalid Under 35 U.S.C. § 101**

2

        1.     ***Alice*** **Step 1: The '101 Patent is directed to the abstract idea of communicating information about an article of commerce by use of a marking.**

3

4

Claim 1 is directed to the abstract idea of communicating information about an article

5

of commerce by use of a marking. Assessing whether Claim 1 is directed to an abstract idea,

6

begins by analyzing the "focus" of the claim, i.e., its "character as a whole," in order to

7

determine whether the claim is directed to an abstract idea. *SAP Am., Inc. v. InvestPic, LLC*,

8

898 F.3d 1161, 1167 (Fed. Cir. 2018). It is necessary to examine a patent's "'claimed

9

advance' to determine whether the claims are directed to an abstract idea." *Finjan, Inc. v.*

10

*Blue Coat System, Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018). A court should strip away

11

"excess verbiage" in order to determine what the claim is directed to. *Affinity Labs of Tex.,*

12

*LLC v. Directv, LLC*, 838 F.3d 1253, 1256 (Fed. Cir. 2016). Here, the '101 Patent is directed

13

to communicating information about an article of commerce by use of a marking. '101

14

Patent, Cl. 1. Put simply, the applicant claimed the use of conventional technology to provide

15

information to a consumer as to whether more information about a product is available.

16

The idea of determining whether more information related to an article of commerce

17

exists is a fundamental practice that can be carried out manually. In essence, the patent

18

claims the fundamental activity of asking a salesperson for information. Take, for example, a

19

customer who goes to a store to purchase a camera. The customer may see a camera on

20

display. However, the customer does not know whether the camera is in stock, or whether it

21

has all the functions the customer desires. The customer may then ask a salesperson for

22

additional information. The salesperson may look at the displayed item, and respond that he

23

or she can look up the information for the customer. Alternatively, the sales person may be

24

unaware of any further information, and may inform the customer accordingly. This captures

25

the fundamental concept of the Asserted Claim.

26

The Federal Circuit's decision in *Secured Mail* is highly instructive. In *Secured Mail*,

27

the Federal Circuit held claims directed to "communicating information about a [mail object]

28

by use of a marking" to be abstract. *Secured Mail*, 873 F.3d 905, 909 (Fed. Cir. 2017). The

claims at issue in *Secured Mail* involved using QR codes on mail packaging to obtain information related to the mailing. *Id.* at 908. This is similar to the Asserted Claim, in which a barcode is used to retrieve information. '101 Patent, Cl. 1, 7:50–64. In *Secured Mail*, the court held that the claims were "not limited to any particular technology of generating, printing, or scanning a barcode." *Secured Mail*, 873 F.3d at 911. Thus, "each step of the process is directed to the abstract process of communicating information about a mail object using a personalized marking" *Id.*  In a similar manner, the Asserted Claim is simply directed to using a scanning device to scan a marking and retrieve information related to a product.'101 Patent, Cl. 1. The claims are not limited in any meaningful way to any particular technology.

The *Secured Mail* court further addressed whether *Enfish*, which was decided after the trial court rendered its opinion, altered the trial court's patent ineligibility determination. *Secured Mail*, 873 F.3d at 910. The court held that it did not, explicitly stating that the trial court had correctly determined that the claims were directed to an abstract idea. *Id.* Specifically, the court differentiated *Secured Mail* from *Enfish* by noting that the claims at issue in *Enfish* were directed to an improvement in computer functionality, while the claims in *Secured Mail* were not, stating that the claims were "not directed to a new barcode format, an improved method of generating or scanning barcodes, or similar improvements in computer functionality." *Id.* Here, similarly, the Asserted Claim uses conventional components and is not directed to an improvement in computer functionality. *See generally* '101 Patent, Cl. 1.

The claim language confirms that representative Claim 1 is directed to the abstract idea of communicating information about an article of commerce by use of a marking. The claim recites generic hardware including "a mobile device," "a visual input device," "a signal processing device," and "a server." '101 Patent, Cl. 1. Nothing in the claim language is concerned with improving the functioning of any of the hardware from a ***technical*** standpoint, which is why the claimed components are described "in vague terms without any meaningful limitations." *In re TLI, Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612–13

(Fed. Cir. 2016) ("the focus of the patentee and of the claims was not on" improved hardware because the specification described the functionality of the hardware "in vague terms without any meaningful limitations").

The Federal Circuit's decision in *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759 (Fed. Cir. 2019) is also instructive. The *ChargePoint* claims were directed to a communication network to facilitate finding a recharging facility, controlling the facility, and paying for the electricity consumed. *Id*. at 766. But the claim described this process only in high-level functional terms, such as "a control device to turn electric supply on and off" and "a transceiver to communicate requests." *Id*. The specification never even suggested that the charging station itself would operate differently or that it was "improved from a technical standpoint." *Id*. at 768. The Federal Circuit therefore concluded that the risk of preemption was high because the broad claim language "would cover any mechanism for implementing network communication on a charging station." *Id.* at 770. It further noted that, "[e]ven if ChargePoint's specification had provided, for example, a technical explanation of how to enable communication over a network for device interaction (which, as discussed above, it did not), the claim language here would not require those details." *Id*. at 769–70.

Like the claims in *ChargePoint*, the applicant of the '101 Patent failed to disclose the details of how to implement his system for determining the existence of more information related to an article of commerce. Instead, the applicant described the system only at a high level of generality. For example, the mobile device of the Asserted Claim has a "communication interface" which allows it to communicate with a server and look up information.'101 Patent, Cl. 1. The Asserted Claim also discloses a "server" which stores a look-up table. *Id*., 9:59–64. But nothing in Claim 1 explains how the mobile device must be programmed to download the look-up table from the server. Moreover, nothing suggests that the mobile device or any other component is "improved from a technical standpoint." *See ChargePoint*, 920 F.3d at 768. In other words, the broad claim language covers only the resulting system the applicants envisioned, but not how to achieve it. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (concluding that claim

not directed to patent-eligible subject matter where "[t]he mechanism for maintaining the state is not described, although this is stated to be the essential innovation.").

By only claiming the desired result— communicating information about an article of commerce by use of a marking —without describing any specific roadmap for doing so, Claim 1 of the '101 Patent falls short of claiming eligible subject matter under § 101. *See Internet Patents*, 790 F.3d at 1348. Indeed, the claim risks preempting *all* methods or systems for communicating information about an article of commerce by use of a marking. *See, e.g.*, *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 843 (E.D. Tex. 2014) (finding "preemptive effect . . . broad" where "the claims [were] largely functional in nature, they [did] not provide any significant description of the particular means by which the various recited functions are performed," and "[a]ll that [was] disclosed [was] the ultimate objective"). The law is clear that claims that "recite the concept, but not the way to implement it," are ineligible for patenting. *Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 740 (D. Del. 2018). Such is the situation with the Asserted Claim.

Claim 1 thus fails *Alice* step one because it is directed to a patent-ineligible abstract idea. *Alice*, 134 S. Ct. at 2355. Claim 1 of the '101 Patent is representative of all the claims because all the claims are "substantially similar and linked to the same abstract idea." *See Content Extraction and Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (holding that district court's analysis of representative claims was appropriate where claims were "substantially similar and linked to the same abstract idea").[1] Accordingly, all of the claims of the '101 Patent are directed to an abstract idea.

### 2.  *Alice* Step 2: No inventive concept to transform the abstract idea into patent-eligible subject matter is disclosed.

Because Claim 1 of the '101 Patent is directed to an abstract idea, the Court must next determine whether it contains an "inventive concept sufficient to transform the claimed

---

[1] *See also Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*, No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938, at *8-9 (E.D. Tex. Mar. 8, 2017) (invalidating 974 claims after analyzing only a few "representative claims" where the other claims were "substantially similar" and "linked to the same abstract idea.").

1    abstract idea into a patent eligible application." *Alice*, 134 S. Ct. at 2357 (internal quotations

2    omitted). To pass this test, Claim 1 "must include additional features" that "must be more

3    than well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715

4    (quotation omitted). Here, Claim 1 is broadly generic and does not contain meaningful

5    limitations that would restrict it to a non-routine, specific application of the abstract idea.

6    The applicant acknowledged that "[p]ortable digital devices are now common." The

7    applicant further acknowledged that "[v]arious communications technologies are frequently

8    built into these devices" and "mobile devices may employ an incorporated imaging device to

9    scan Universal Product Codes (UPCs) or other symbologies disposed on articles of

10   commerce to receive more information on such articles." *Id*. at 1:48, 1:59–62. The problem

11   identified by the applicant was that "devices take time to connect to the Internet (if Internet

12   service is even available) and then the user still may or may not have information on the

13   article of commerce." *Id*. at 1:64–66. The applicant contended that the delay and lack of

14   information leads to user frustration. Id. at 1:66–2:2. The applicant thus proposed a solution

15   whereby a user may be notified of the existence of a link to information of an article of

16   commerce. *Id.* at 2:17–19.

17   The solution, however, is claimed and implemented via the conventional application

18   of generic means. There is no unconventional feature or activity disclosed in the Asserted

19   Claim.  This is especially true given that no special programming or improved component is

20   claimed. All that is disclosed to perform the functionality of retrieving information as to the

21   existence of further information of an article of commerce is a "mobile device" having a

22   generic "visual input device" and "signal processing device," a "server" that hosts a "look-up

23   table," and "digital files," where the mobile devices uses the visual input device to scan a

24   barcode and retrieve the relevant information from the look-up table. *Id*., Cl. 1.

25   However, Claim 1 is altogether devoid of any technical explanation as to how to

26   implement the purported invention. *See In re TLI*, 823 F.3d at 615 (claims failed *Alice's* step

27   2 where specification limited its discussion of "additional functionality" of conventional

28   components "to abstract functional descriptions devoid of technical explanation as to how to

implement the invention"). "At *Alice* step two, it is [thus] irrelevant whether [communicating

11

1   information about an article of commerce by use of a marking] may have been non-routine or

2   unconventional as a factual matter." *BSG Tech*, 899 F.3d at 1290–91 ("As a matter of law,

3   narrowing or reformulating an abstract idea does not add 'significantly more' to it."); *see*

4   *also Berkheimer v. HP Inc.*, 881 F.3d 1360, 1370 (Fed. Cir. 2018) (claims lacked an

5   inventive concept because they "amount to no more than performing the abstract idea of

6   parsing and comparing data with conventional computer components"); *Affinity Labs of Tex.*,

7   838 F.3d 1262 (claim lacked an inventive concept because it "simply recites the use of

8   generic features . . . as well as routine functions . . . to implement the underlying idea").

9   Adding generic functionality to an existing mobile device does not amount to an inventive

10  concept as a matter of law. *See Alice*, at 2359-60.

11          Claim 1 fares no better when its limitations are viewed in combination. The applicant

12  did not describe how the claimed system "is a ***technical*** improvement over prior art." *See*

13  *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir.

14  2016) (emphasis added). The applicant sought only to reduce user frustration with finding

15  information related to an article of commerce. '101 Patent, 1:66–2:6. He did so by storing a

16  look-up table that can be accessed locally and thus reduce user frustration because,

17  purportedly, the user would at least know whether further information exists. *See id*. This

18  merely adds generic database functionality to the mobile device *See ChargePoint*, 920 F.3d

19  759, 774-75 (rejecting plaintiff's reliance on *Bascom* because the claims "do not improve the

20  technology" but instead "merely add generic networking capabilities to [the claimed

21  components] and say 'apply it'"). Considering the limitations in combination "add[s] nothing

22  . . . that is not already present when the [limitations] are considered separately." *Alice*, 134

23  S.Ct. at 2359 (internal brackets and quotation marks omitted). There is nothing "inventive"

24  about using a mobile device and adding generic database functionality. Claim 1 is devoid of

25  any technical explanation as to how to implement the invention and thus provides no

26  inventive concept. *See In re TLI*, 823 F.3d at 615 (claims failed *Alice's* step 2 where

27  specification limited its discussion of "additional functionality" of conventional components

28  "to abstract functional descriptions devoid of technical explanation as to how to implement

1    the invention").

2         And the Asserted Patent's use of terms such as "barcodes" and "information link

3    indicators" to describe computer components that were known in the art is not enough to

4    confer patentability. *See Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d

5    1322, 1341 (Fed. Cir. 2017) ("In particular, the MRTs and PRTs—***although technical***

6    ***sounding***—include generic data types for which the system can store the extracted data.")

7    (emphasis added). Indeed, the Supreme Court has long "warn[ed] . . . against interpreting

8    § 101 'in ways that make patent eligibility depend simply on the draftsman's art.'" *Alice*, 134

9    S. Ct. at 2360 (quoting *Mayo*, 132 S. Ct., at 1294). Barcodes were known in the art. '101

10   Patent at 7:61–64; *see also Secured Mail*, 873 F.3d at 912("[t]he ***use of barcodes was***

11   ***commonplace and conventional*** in 2001") (emphasis added).). The information link

12   indicator may simply be a "status or check signal," neither of which would be unknown to

13   those in the art. *Id.* at 4:4-19.

14        Unlike in *Berkheimer*, this case does not present any factual disputes requiring

15   resolution before the Court can decide this § 101 issue. In *Berkheimer*, the Federal Circuit

16   noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed

17   data in a purportedly unconventional manner." *Berkheimer*, 881 F.3d at 1369. The Federal

18   Circuit then examined whether the improvements described in the specification were

19   included in the claims. For those claims where the inventive feature in the specification was

20   "captured in the claims," the Federal Circuit found a "factual dispute regarding whether the

21   invention describe[d] well-understood, routine, and conventional activities." *Id*. But where

22   the claims did not recite the purportedly inventive features described in the specification, the

23   Federal Circuit concluded that they were directed to patent ineligible subject matter under

24   § 101. *Id.* Here, in contrast, there is no need for fact discovery at all because neither Claim 1

25   nor the specification of the Asserted Patent describes any unconventional components or the

26   use of generic components in some unconventional manner, and no amount of fact discovery

27   can change that.

28        As discussed above, the purported advance of Scanning Technologies's claims is the

1    *idea* of communicating information about an article of commerce by use of a marking. '101

2    Patent at 2:17-19. But Claim 1 of the '101 Patent does not describe any ***particular***

3    ***mechanism*** for achieving the result. *See Secured Mail.*, 873 F.3d at 912 (claims fail *Alice*

4    step two where "[t]he claim language does not provide any specific showing of what is

5    inventive about the [limitation in question] or about the technology used to generate and

6    process it"). The recited limitations—whether considered individually or as an ordered

7    combination—are insufficient to add "significantly more" to the abstract idea.

8        Because it is altogether devoid of any "inventive concept," Claim 1 of the '101 Patent

9    is thus patent-ineligible under § 101. *See Alice*, 134 S. Ct. at 2359–60.

10            **3.      The remaining claims are also abstract and contain no "inventive**
                      **concept."**

11

12       The remaining claims of the Asserted Patent recite the same abstract idea:

13   communicating information about an article of commerce by use of a marking. Indeed, the

14   remaining independent claims of the Asserted Patent are substantially similar to the Asserted

15   Claim. Because these independent claims cannot be meaningfully distinguished from Claim 1

16   of the '101 Patent, they are ineligible for the same reasons.

17       The dependent claims fare no better. The only differences relate to token or

18   insignificant pre- or post-solution activity— for example, displaying the information

19   retrieved (Claims 2, 8, 13, and 18), producing audio alerts (Claims 3, 9, 14, and 19), updating

20   (Claims 5, 10, and 20), and linking (Claims 4, 11, 15, and 21). *See Ultramercial*, 722 F.3d at

21   1346 ("claim . . . will not be limited meaningfully if it contains only insignificant or token

22   pre or post-solution activity—such as identifying a relevant audience, a category of use, field

23   of use, or technological environment"). Indeed, all the dependent claims are written in the

24   same or similar high-level of generality as in Claim 1 of the '101 Patent. None of these

25   limitations is sufficient to raise the claims beyond the abstract idea to which they are

26   directed.

27       Like Claim 1 of the '101 Patent, the limitations in the remaining claims are directed

28   to the same abstract idea of communicating information about an article of commerce by use

of a marking and are altogether devoid of any "inventive concept." They are thus patent ineligible under § 101. *See Alice*, 134 S. Ct. at 2359-60; *see also Berkheimer*, 881 F.3d at 1365 ("Courts may treat a claim as representative where there is no "meaningful argument for the distinctive significance of any claim limitations not found in the representative claim").

## VI.    CONCLUSION

For the foregoing reasons, Finale respectfully requests that the Court dismiss Scanning Technologies's Complaint for failure to state a claim upon which relief can be granted. Because leave to amend would be futile, Finale respectfully requests dismissal with prejudice.

Dated: June 7, 2021                          Respectfully submitted,

**FISH & RICHARDSON P.C.**

By: */s/ Rodeen Talebi*
Rodeen Talebi (CA SBN 320392)
FISH & RICHARDSON P.C.
500 Arguello St. Suite 400
Redwood City, CA 94063
Telephone: (213) 533-4240
Facsimile: (858) 678-5099
Email: talebi@fr.com

Neil J. McNabnay (*pro hac vice*)
Ricardo J. Bonilla (*pro hac vice*)
Noel F. Chakkalakal (*pro hac vice*)
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone: (214) 747-5070
Facsimile: (214) 747-2091
mcnabnay@fr.com
rbonilla@fr.com
chakkalakal@fr.com
**COUNSEL FOR DEFENDANT FINALE, INC.**